[No. B038292. Second Dist., Div. Five. Jan. 17, 1991.]

OVERHEAD ELECTRIC COMPANY, INC., Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

COUNSEL

Clyde R. Maxwell for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Edmond B. Mamer and Philip C. Griffin, Deputy Attorneys General, for Defendant and Respondent.

OPINION

LUCAS, J.*—Overhead Electric Company, Inc. (Overhead) appeals from judgment entered against it and in favor of the State Board of Equalization (Board). We affirm.

FACTS

Overhead, a corporation engaged in business as an electrical contractor, entered into a subcontract to furnish and install an emergency standby uninterruptible power system at Mather Air Force Base in California. The portion of the contract involving the electrical installation was completed and the prime contractor received a certified copy of acceptance on or about January 20, 1981.

The Board audited Overhead for the period from January 1, 1978, through December 31, 1979, and determined that there was an underpayment of tax in the amount of $14,023.68 plus a penalty of $1,402.37. The tax with penalty was asserted on the purchase price of the equipment required for the uninterruptible power system furnished on the electrical subcontract at Mather Air Force Base.

Overhead paid that amount and filed a claim for refund. The claim was denied by the Board, and Overhead, along with others, filed the within action against the Board for refund of sales and use taxes.

_____

* Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

After trial on the matter, the court entered judgment against Overhead, and Overhead appeals.

### CLASSIFICATION OF PROPERTY

██ Under Revenue and Taxation Code sections 6384 and 6007.5, property purchased by a contractor and used in the performance of a contract with the United States for the construction of an improvement to real property is subject to sales or use tax. Revenue and Taxation Code section 6381 exempts from such tax the gross receipts from the sale of tangible personal property to the United States Government. The administrative interpretation of these statutory provisions is contained within title 18, California Code of Regulations, section 1521.

Under Section 1521, construction contractors designated as "United States Contractors" are considered consumers of and are therefore subject to sales or use taxes for materials or fixtures they furnish and install in the performance of contracts with the United States Government. (Cal. Code Regs., tit. 18, § 1521, subd. (b)(1)(A).) However, United States contractors are considered retailers of property classified as machinery and equipment furnished in connection with the performance of a construction contract with the United States Government. Tax does not apply to the sale of machinery and equipment to United States contractors, provided title to the property passes to the United States Government before the contractor makes any use of it. (Cal. Code Regs., tit. 18, § 1521, subd. (b)(1)(B).)

Overhead argues that the uninterruptible power system it supplied to the United States Government should be classified as machinery or equipment, for which no tax need be paid, rather than as a fixture subject to sales or use tax. We find the latter classification to be correct.

California Code of Regulations, title 18 section 1521, subdivision (a)(5) defines fixtures as "items which are accessory to a building or other structure and do not lose their identity as accessories when installed." Appendix B to this section lists typical items regarded as fixtures, including: air conditioning units; awnings; burglar alarm and fire alarm fixtures; cabinets, counters and lockers; cranes affixed to the structure; elevators, hoists and conveying units; furnaces, boilers and heating units; lighting fixtures; plumbing fixtures; refrigeration units; signs; television antennas; transformers and switchgear; vault doors and equipment; venetian blinds. Also specifically listed are: "Electric generators (affixed to and accessory to a building, structure or fixed works)."

"Machinery and equipment" is defined in California Code of Regulation, title 18, section 1521, subdivision (a)(6) as "property intended to be used in the production, manufacturing or processing of tangible personal property, the performance of services or for other purposes (e.g., research, testing, experimentation) not essential to the fixed works, building, or structure itself, but which property incidentally may, on account of its nature, be attached to the realty without losing its identity as a particular piece of machinery or equipment and, if attached, is readily removable without damage to the unit or to the realty. 'Machinery and equipment' does not include junction boxes, switches, conduit and wiring, or valves, pipes, and tubing incorporated into fixed works, buildings, or other structures, whether or not such items are used solely or partially in connection with the operation of machinery and equipment, nor does it include items of tangible personal property such as power shovels, cranes, trucks, and hand or power tools used to perform the construction contract."

Appendix C lists typical items regarded as machinery and equipment, including: drill presses; lathes; machine tools; printing presses; and "Electric generators (unaffixed, or, if affixed, which meet the requirements of subparagraph (a)(6)." Appendix C also lists items which are not machinery or equipment, such as wiring or piping used as a source of power or water for machinery and equipment; radio transmission antennas; large tanks; fire alarm systems; street light standards; and cooling towers other then small prefabricated units.

■ One distinction evident from the definitions is that fixtures are items "accessory to a building or other structure," whereas items classified as machinery and equipment are "not essential to the fixed works, building, or structure itself." As observed by the court in *C. R. Fedrick, Inc.* v. *State Bd. of Equalization* (1988) 204 Cal.App.3d 252, 268-269 [251 Cal.Rptr. 305], "the items which are listed in the rule as machinery and equipment are all stand alone, self-contained units (save for power supply) used in manufacturing, which in their operation are not ordinarily integrated structurally with other units." Thus it is necessary to consider the function and integration of the items into the property as a whole in seeking to classify them.

■ The items at issue in this case are two uninterruptible power supply systems (UPS) and two generators. In the event of a commercial power failure, the battery-operated UPS comes on, starts up the generator, and maintains power until the generator takes over. When the commercial power is restored, the UPS shuts the generator down. One UPS system and generator were installed to provide security lighting around the B-52 bombers, and the other UPS system and generator were installed to provide

security lighting around the revetment where the nuclear bombs and related items are kept.

Clearly, the UPS systems and generators were intended to provide accessory power to the facility in order to maintain full security lighting in case of power failure. The importance of this backup power source to maintain full lighting at the facility is highlighted by paragraph 4.2.3 of the specifications for the UPS, which states: "If the UPS must be taken out of service for maintenance or an internal failure, the static switch shall transfer the load to the alternate source without an interruption. Disconnect means shall be provided as part of the static switch so the complete UPS including the static switch can be electrically isolated for maintenance once the load has been transferred to the alternate source. Retransfer of the load shall be accomplished by automatically synchronizing the UPS to the alternate source and allowing the inverter to ramp into the load and then disconnect the alternate source."

Implicit in this specification is the ability to have a functioning UPS system hooked up and operable at all times; if a system needs to be disconnected, it is essential that an alternate source be substituted to maintain the same level of functioning. Items which are considered so crucial to the facility's operations do not fall within the definition of machinery and equipment as property which is "not essential to the fixed works, building, or structure itself," as set forth in California Code of Regulations, title 18, section 1521, subdivision (a)(6).

Further guidance as to what constitutes a fixture, and thus what is not machinery and equipment for purposes of assessment of sales and use taxation on a United States contractor, may properly be found under the law of property taxation. (*C. R. Fedrick, Inc.* v. *State Bd. of Equalization, supra,* 204 Cal.App.3d at p. 264.) ■ The classic test for determining whether an item is a fixture contains three parts: " '(1) the manner of its annexation; (2) its adaptability to the use and purpose for which the realty is used; and (3) the intention of the party making the annexation.' [Citation.]" (*Ibid.*)

One formulation of this test is found in section 122.5, subdivision (a)(1) of title 18 of the California Code of Regulations. That section defines a fixture, for purposes of property tax assessment, as "an item of tangible property, the nature of which was originally personalty, but which is classified as realty for property tax purposes because it is physically or constructively annexed to realty with the intent that it remain annexed indefinitely." In terms of annexation, section 122.5 notes that actual physical attachment is not the sole criteria; property may be considered annexed, even if it is not

attached to the realty, if the weight or size are such that relocation or removal of the property would be so difficult that it seems the item is intended to remain in place indefinitely. (Cal. Code Regs. tit. 18, § 122.5, subd. (b)(2).) Moreover, property may be considered constructively annexed "if it is a necessary, integral, or working part of the realty." (Cal. Code Regs. tit. 18, § 122.5, subd. (c)(1).)

■ The evidence in this case established that each generator was installed in a generator room, bolted down to a concrete pad. The UPS systems were free-standing units, approximately eight feet long, six feet high and three feet deep; they each contained a bank of batteries putting out one hundred ten volts through a step-up transformer that maintains the lighting. These systems provide power to the security lighting around the B-52's and the nuclear bomb revetments; those lights, located all the way around the fenced areas, are attached to wood or steel power poles set into the ground. The systems also provide power for emergency lights inside the generator buildings and a security building.

It seems clear that both by actual attachment and by sheer bulk, these items are properly considered affixed to the realty. In addition, they are essential, integral parts of the operation of the facility, and must therefore be classified as fixtures, rather than machinery and equipment. Overhead, as a United States contractor, may be subjected to sales or use tax for this property.

### SITUS OF SALE FOR TAX PURPOSES

■ Overhead contends that the UPS systems and generators were purchased from retailers in this state and delivered in this state, and that sales tax should therefore have been imposed on the retailers, not on the purchaser. Board argues that the sales did not take place in California, and that the transactions were therefore subject to use tax on the purchaser rather than sales tax on the retailer.

For the privilege of selling tangible personal property at retail in this state, a sales tax is imposed upon retailers based on gross receipts for such sales. (Rev. & Tax. Code, § 6051.) Under title 18, California Code of Regulations, section 1620, subdivision (a)(2)(A), sales tax applies on property brought into this state "when the order for the property is sent by the purchaser to, or delivery of the property is made by, any local branch, office, outlet or other place of business of the retailer in this state, or agent or representative operating out of or having any connection with, such local

branch, office, outlet or other place of business and the sale occurs in this state."

However, under subdivision (a)(2)(B) of title 18, California Code of Regulations section 1620, "Sales tax does not apply when the order is sent by the purchaser directly to the retailer at a point outside this state, or to an agent of the retailer in this state, and the property is shipped to the purchaser, pursuant to the contract of sale, from a point outside this state directly to the purchaser in this state, or to the retailer's agent in this state for delivery to the purchaser in this state, provided there is no participation whatever in the transaction by any local branch, office, outlet or other place of business of the retailer or by any agent of the retailer having any connection with such branch, office, outlet, or place of business."

Purchase order No. 15556, introduced at trial, shows that pursuant to a price quotation dated March 27, 1978, Overhead ordered two UPS systems from Exide Power Systems Division in San Francisco, California. Overhead employee Robert Goodman testified that the UPS systems were delivered to Overhead by Exide, and that Exide supervised the installation of the systems for two weeks at Mather Air Force Base to make sure they were working properly. However, he did not know which of the Exide factories the systems came from. In addition, acknowledgment and billing for the UPS systems came from Exide's North Carolina location. The invoices were marked "tax exempt" and "freight prepaid."

Although this evidence indicates that the initial order was placed in this state, the actual transaction was processed out of state. Appellant failed to establish that the property was shipped from inside this state, or that the local state office of Exide participated in the transaction after receipt of the purchase order, either in supplying of property or in supervision of installation.

A declaration by Michael Seidman, tax manager of Exide Electronics Corporation, states that following a Board audit of Exide Power Conversions Division for the period October 1, 1975, through June 30, 1979, a determination of tax liability was made and timely paid. Upon such payment, the Board representatives verified that all transactions performed during that time period were fully tax paid. This evidence does not establish that sales tax was paid by Exide on the sale of the UPS systems, particularly in light of the "tax exempt" marking on the invoice. Appellant's claim that this was a retail sale subject to sales tax on the vendor is unsupported by the record.

As to the generators, the purchase order showed that they were ordered from I.L.I. Corp. in Portland, Oregon. According to Robert Goodman, I.L.I. delivered the generators to Overhead. There was no evidence showing that this was a purchase from a retailer in this state for purpose of assessment of sales tax.

Use tax applies to property which is purchased for storage, use or other consumption and which is stored, used, or consumed in this state, if the sale of that property is exempt from sales tax. (Cal. Code Regs. tit. 18, 1620, subd. (b)(1).) "Property purchased outside of California which is brought into California is regarded as having been purchased for use in this state if the first functional use of the property is in California." (Cal. Code Regs., tit. 18, § 1620, subd. (b)(3).) Under Revenue and Taxation Code section 6202, every person consuming in this state tangible personal property purchased from a retailer is liable for use tax on the property consumed unless he obtains a receipt from a retailer engaged in business in this state or from a retailer authorized by the Board to collect the tax.

The UPS systems and generators were purchased by Overhead from out-of-state retailers for use in California and would thus be subject to use tax under Revenue and Taxation Code section 6202. Overhead failed to produce receipts from either retailer which would exempt it from liability for said tax. Overhead was thus properly subjected to use tax as to these purchases.

### DISPOSITION

The judgment is affirmed.

Turner, P. J., and Ashby, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 27, 1991.